# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JUNE 2026**

E-Filing Number: 2606056727

**03283**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| SAKIEMA WOOD | GREATER PHILADELPHIA HEALTH ACTION, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 881 PERTH PLACE APT 304 KISSIMMEE FL 34758 | 5000 WOODLAND AVE PHILADELPHIA PA 19143 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  |  |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  |  |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  |  |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  |  |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal  [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS |
|---|---|
| [ ] $50,000.00 or less  [X] More than $50,000.00 | [ ] Arbitration  [ ] Mass Tort  [ ] Commerce  [ ] Settlement  [X] Jury  [ ] Savings Action  [ ] Minor Court Appeal  [ ] Minors  [ ] Non-Jury  [ ] Petition  [ ] Statutory Appeals  [ ] W/D/Survival  [ ] Other: _____ |

**CASE TYPE AND CODE**

1E – EMPLOYMENT, WRONGFUL DISCHARGE

**STATUTORY BASIS FOR CAUSE OF ACTION**



**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED PRO PROTHY**

JUN **24** 2026

**S. GILLIAM**

**IS CASE SUBJECT TO COORDINATION ORDER?**

YES       NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>SAKIEMA WOOD</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| DAVID M. KOLLER | 2043 LOCUST STREET SUITE 1B PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER |  |
|---|---|---|
| (215)545-8917 | (215)575-0826 |  |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 90119 | davidk@kollerlawfirm.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *DAVID KOLLER* | Wednesday, June 24, 2026, 10:24 am |

FINAL COPY (Approved by the Prothonotary Clerk)

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**TRIAL DIVISION - CIVIL**

Filed and Attested by the
Office of Judicial Records
24 JUN 2026 10:24 am
S. GILLIAM

| | | |
|---|---|---|
| SAKIEMA WOOD, | : | |
| **Plaintiff,** | : | **April Term 2026** |
| v. | : | **Case No. 260402737** |
| GREATER PHILADELPHIA HEALTH | : | |
| ACTION, INC., | : | |
| **Defendant.** | : | |

## <u>Notice to Defend</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Philadelphia Bar Association & Lawyer Referral Service
One Reading Center
Philadelphia, PA 19107
215-238-6333
TTY 215-451-6197

Date: June 15, 2026

By: ___*/s/David M. Koller*___
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com
*Counsel for Plaintiff*

Case ID: 260603283

**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                         *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY**
**TRIAL DIVISION - CIVIL**

| | | |
|---|---|---|
| **SAKIEMA WOOD,** | : | |
| **Plaintiff,** | : | **April Term 2026** |
| | : | |
| **v.** | : | **Case No. 260402737** |
| | : | |
| **GREATER PHILADELPHIA HEALTH** | : | **Complaint and Jury Demand** |
| **ACTION, INC.,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Sakiema Wood (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Greater Philadelphia Health Action, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual who, during all times relevant to this cause of action, resided in Philadelphia, PA.

Case ID: 260603283

3. Upon information and belief, Defendant Greater Philadelphia Health Action, Inc. is a community health center with a location at 5000 Woodland Avenue, Philadelphia, PA 19143 and corporate headquarters located at 1401 S 31st Street, Philadelphia, PA 19146.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and/or practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and/or practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant is considered to be at home within the Commonwealth of Pennsylvania.

8. The Court may exercise original subject-matter jurisdiction over the instant action because it is a court of general jurisdiction.

9. Venue is properly laid in Philadelphia County because the Defendant is located within Philadelphia County and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in Philadelphia County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

3

Case ID: 260603283

11. Plaintiff exhausted her administrative remedies under Title VII, the ADA, PHRA and the PFPO.

12. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the Pennsylvania Human Relations Commission ("PHRC") alleging gender and religious discrimination as well as retaliation against Defendant.

13. The Complaint was assigned a Case Number 202502477 and was dual filed with the Equal Employment Opportunity Commission ("EEOC").

14. The EEOC assigned the Complaint a Charge Number 17F-2025-61013.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated January 20, 2026.

16. On or about March 12, 2026, Plaintiff filed an amended Charge of Discrimination with the EEOC alleged religious and disability discrimination as well as retaliation against Defendant.

17. The Charge was assigned a Charge Number 530-2026-04622 and was dual filed with the PHRC.

18. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated March 16, 2026.

19. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

20. Plaintiff initiated this matter by filing a praecipe for writ of summons on April 20, 2026; within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA and PFPO claims.

4

Case ID: 260603283

21. Thereafter, Plaintiff effectuated service of the writ of summons upon Defendant on May 1, 2026.

22. Plaintiff now files this instant complaint prior to any Rule to File Complaint.

23. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

24. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

25. On December 2, 2024, Defendant hired Plaintiff in the position of Safety and Security Officer.

26. Plaintiff was well qualified for her position and performed well.

27. Plaintiff is female and is a practitioner of Santeria, a sincerely held religious belief protected by Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

28. Plaintiff has the serious health conditions of Generalized Anxiety Disorder ("GAD"), Major Depressive Disorder ("MDD"), post-traumatic stress disorder ("PTSD") and functional tremors which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA"), the PHRA and the PFPO.

29. The major life activities affected by the aforementioned disabilities, include, but are not limited to, communicating, sleeping, and working.

### DEFENDANT SUBJECTED PLAINTIFF TO DIFFERENTIAL TREATMENT BASED ON HER GENDER

30. Beginning in or around February 2025, Plaintiff observed that she was being treated differently by Nicole Kazadi, Operations Director, and Xia Lin, Manager, and less

5

Case ID: 260603283

favorably than her male coworkers, including but not limited to differences in assignments, building access, possession of keys, operational authority and exclusion from communications regarding her own duties.

31. Kazadi, Lin, and Tanya Nole, Site Support Coordinator, routinely communicated assignments to male coworkers, including, but not limited to, Nicholas Amicone, Security Staff, and Reginald Frison, Security Staff, and then designated them as the point of contact for matters directly related to Plaintiff's job, marginalizing her role and authority.

32. For example, when Amicone was out on vacation, Plaintiff sought clarification from Kazadi, Line and Nole, regarding her responsibilities during his absence.

33. Although Kazadi initially stated that everything was fine, Kazadi, soon thereafter began to nitpick Plaintiff's work, falsely accuse her of tardiness, and subject her to heightened scrutiny not imposed on male employees.

## PLAINTIFF INFORMED DEFENDANT OF HER RELIGIOUS BELIEFS AND THAT SHE COULD NOT HAVE HER PICTURE TAKEN OR BE VIDEO RECORDED AS A RESULT

34. Plaintiff notified Kazadi, Lin and Nole of her religious practices which required her to begin wrapping her head and wearing all white clothing.

35. In addition, she informed them that she could not have her picture taken or be video recorded.

36. Kazadi informed Plaintiff that her religion "seemed interested" and that she intended to research it.

6

Case ID: 260603283

**PLAINTIFF REQUESTED A RELIGIOUS LEAVE OF ABSENCE, BUT DEFENDANT DELAYED IN APPROVING PLAINTIFF'S REQUEST**

37. On or about March 19, 2025, Plaintiff requested a religious leave via email from May 23, 2025 through June 2, 2025 to observe her faith.

38. Despite repeated follow-ups, Defendant failed to approve Plaintiff's religious leave until April 9, 2025, while male coworkers were routinely granted time off without delay or resistance.

39. Plaintiff learned of the approval when Amicone informed her leave of absence had been placed on the calendar.

**PLAINTIFF COMPLAINED OF THE DELAY IN THE APPROVAL OF HER RELIGIOUS LEAVE AND WAS RETALIATED AGAINST**

40. Then Plaintiff complained to Kazadi and Lin about the delay in approving her religious leave, Kazadi began to micromanage her, ignore her communications, and exclude her from normal workplace interactions.

**PLAINTIFF REQUESTED CLARIFICATION OF JOB RESPONSIBILITIES AND WAS THEN ACCUSED OF NOT BEING VISIBLE AT WORK IN RESPONSE**

41. On March 26, 2025, Plaintiff sought clarification of her responsibilities from Kazadi and Lin following a meeting.

42. Kazadi and Lin stated that "We haven't seen you all day", "Where have you been?" and that she was not visible enough, or words to that effect.

**PLAINTIFF SAW THAT AMICONE WAS FREQUENTLY AWAY FROM HIS POST AND SOCIALIZING WITH COWORKERS WITHOUT ISSUE**

43. In April 2025, Plaintiff noticed Amicone was frequently away from his post.

44. She witnessed Kazadi, Lin and Cinthia Pena, Administrator, spending excessive time socializing with Amicone, frequently buying him lunch, while simultaneously making

7

Case ID: 260603283

comments questioning Plaintiff's presence and that she was not visible during the day despite performing her job duties.

### PLAINTIFF WAS PLACED ON A MEDICAL LEAVE OF ABSENCE

45. In late May 2025, after several serious security incidents involving individuals entering the building and attacking employees, Plaintiff suffered a hemiplegic migraine.

46. This condition was directly related to her disabilities which were exacerbated by the extreme stress.

47. Her physician placed her on a one-week medical leave as a reasonable accommodation from May 16, 2025 to May 21, 2025.

### PLAINTIFF WAS NOT PAID PROPERLY AND DEFENDANT REFUSED TO ADDRESS IT

48. Plaintiff worked approximately 4.5 hours on March 13 and 14, 2025, but was not paid for that time.

49. The missing time was due to timekeeping errors and an emergency incident.

50. Despite following up via in person, email and phone calls with Kazadi, Pena, Lin and Lorraine Paul, Human Resources, Defendant never corrected her pay.

### PLAINTIFF WENT OUT ON HER APPROVED RELIGIOUS LEAVE AND DEFENDANT CHANGED HER SCHEDULE UPON HER RETURN TO WORK

51. From May 23 through June 1, 2025, Plaintiff was absent from work on an approved religious leave.

52. Upon returning to work on June 2, 2025, Kazadi informed Plaintiff in a group chat with Lin and Pena that she would be required to work a shift either opening or closing the building, despite her long-standing schedule of doing neither (8:30 a.m. to 5:00 p.m.), which had been agreed upon at hire.

8

Case ID: 260603283

53. Previously, on May 12, 2025, Plaintiff had discussed this with Kazadi and Pena and explained that she could not open or close.

54. Kazadi had responded by telling Plaintiff to think if she wanted to open or close.

55. This change was retaliatory and inconsistent with prior practice.

## PLAINTIFF WORE HER RELIGIOUS ATTIRE TO WORK AND WAS SUBJECTED TO A DISCRIMINATORY COMMENT BY AMICONE

56. On June 6, 2025, a designated dress-down Friday, Plaintiff wore religious attire consisting of all-white clothing, religious beads worn under her shift, and a head covering.

57. Amicone commented that Plaintiff "looked like a slave" because of her religious attire.

## LIN PHOTOGRAPHED PLAINTIFF AND BROUGHT HER INTO A MEETING WITH KAZADI AND PENA ON FACETIME

58. Lin photographed Plaintiff and then brought her into a meeting with Kazadi and Pena on FaceTime.

59. Kazadi proceeded to question Plaintiff on her religious attire.

60. Plaintiff repeatedly informed them that she could not be on camera due to her religious beliefs, but they continued with the FaceTime call.

## DEFENDANT REFUSED TO ALLOW PLAINTIFF TO WEAR HER RELIGIOUS ATTIRE

61. Management required her, and only her, to wear Defendant's fleece sweater over her religious attire, claiming all-white attire was not approved.

62. Defendant allowed other employees to wear jeans, T-shirts, and sneakers.

9

Case ID: 260603283

## PLAINTIFF COMPLAINED ABOUT THE RELIGIOUS DISCRIMINATION AND HOW IT EXACERBATED SYMPTOMS OF HER DISABILITIES

63. Immediately after the meeting, Plaintiff emailed Kazadi and cc'd Lin, Pena and Quincina Jackson, Site Coordinator, regarding the incident, the religious discrimination and how it exacerbated the symptoms of her disabilities.

64. Rather than engaging in the interactive process, Kazadi cc'd Sarah Lai, Chief of Medical Patient Services, and Kenny Ouyang, Medical Patient Services Division Quality Director, on her response.

## PLAINTIFF COMPLAINED TO DEFENDANT REGARDING THE DISCRIMINATION THAT SHE WAS SUBJECTED TO

65. On June 9, 2025, Plaintiff met with Ouyang and Daravanh Sanith, Health Center Administrator, and complained about the pattern and practice of discrimination that she was being subjected to.

66. Ouyang requested Plaintiff to send him any emails she had previously sent to management regarding her complaints.

67. Plaintiff sent these emails to Ouyang on June 12, 2025.

68. Ouyang continued to contact Plaintiff to obtain additional information of workplace incidents.

69. On one of these calls, Ouyang asked Plaintiff if she was experiencing any additional issues.

70. Plaintiff informed Ouyang of Jackson speaking to her in a disrespectful manner in front of patients and staff.

71. Notably, Jackson did not speak to Plaintiff's male and non-santerian coworkers in a similar manner.

10

Case ID: 260603283

72. However, Ouyang responded to Plaintiff, "If your manager tells you to do something, you do it and you don't ask questions," or words to that effect.

## OUYANG TRANSFERRED PLAINTIFF TO THE WOODLAND AVENUE LOCATION IN RESPONSE TO HER COMPLAINTS

73. On June 16, 2025, Ouyang called Plaintiff and informed her that she was being transferred to the Woodland Avenue location.

74. Ouyang instructed Plaintiff not to notify anyone of her transfer, he would inform leadership and that everything would be handled internally.

75. On June 18, 2025, Plaintiff reported to Defendant's Woodland Avenue location as instructed.

## OUYANG INFORMED PLAINTIFF THAT THE INVESTIGATION FOUND HER COMPLAINTS WERE UNSUBSTANTIATED

76. Later that day, Sanith called Plaintiff into the office for a meeting in which Ouyang participated via phone call.

77. Ouyang informed Plaintiff that he had completed his investigation and found that management had not engaged in any wrongdoing.

## DEFENDANT ISSUED PLAINTIFF AN UNWARRANTED DISCIPLINE

78. On June 30, 2025, Defendant issued Plaintiff a disciplinary write-up in person for allegedly blocking someone from the building, despite her explanation and lack of misconduct.

## PLAINTIFF COMPLAINED ABOUT THE DISCIPLINE, BUT OUYANG RESPONDED THAT PLAINTIFF'S TONE WAS "RUDE" AND "HOSTILE"

79. Plaintiff emailed a complaint to Ouyang regarding the discipline.

80. However, on July 1, 2025, Ouyang responded by criticizing her tone in an email and characterized it is as "violent", "hostile", "rude" and "unprofessional".

11

Case ID: 260603283

## PLAINTIFF COMPLAINED ABOUT AMICONE'S DISCRIMINATORY COMMENT DURING A MEETING, BUT DEFENDANT REFUSED TO ADDRESS IT

81. On July 9, 2025, Plaintiff was summoned by Cheyenne Smith, Health Center Administrator, to a meeting with Lorraine Paul, Human Resources Specialist, Smith, Kazadi, Lai and Ouyang where Lai instructed her not to send any further emails about the investigation or her treatment and threatened that Defendant would "rethink her role" if she continued.

82. Plaintiff complained to them that Amicone had made the racially and religiously offensive remark that she "looked like a slave".

83. Yet, no corrective action was taken.

## DEFENDANT SUSPENDED PLAINTIFF

84. When Plaintiff began to cry, Lai told her to seek therapy, or words to that effect.

85. Plaintiff was then instructed not to report to work until July 14, 2025 and to return with a "better attitude".

86. Plaintiff was suspended at that time and she returned to work on July 14, 2025.

## NOLE AND SANITH HARASSED PLAINTIFF FOR HER RELIGIOUS CLOTHING WHEN SHE RETURNED TO WORK

87. Upon her return, Nole and Sanith continued to harass Plaintiff regarding her religious clothing by enforcing uniform requirements against Plaintiff.

88. However, her male and non-Santerian coworkers were allowed to wear casual clothing during dress-down days.

89. On or about July 22, 2025, Nole again harassed Plaintiff about her religious clothing by stating that she was the only Security Staff receiving a new uniform and "What you are wearing is not it," or words to that effect.

Case ID: 260603283

90. That same day, Michael Ross, Security Staff, notified Plaintiff that Defendant would not allow her to continue to wear her all-white religious clothing.

91. On or about August 7, 2025, Nole had Plaintiff try on the new uniform.

92. Nole proceeded to mock Plaintiff's appearance, as she was wearing a head wrap with no visible hair underneath for religious reasons, by stating to Ross that she did not know if the uniform made Plaintiff appear "like a boy or a girl", or words to that effect.

## KAZADI ISSUED A BACKDATED NEGATIVE PERFORMANCE REVIEW

93. On July 31, 2025, Kazadi issued a backdated negative performance review to Plaintiff inconsistent with her prior excellent evaluations, falsely suggesting poor performance throughout her employment, but did not provide any patient complaints, policy violations, incidents or documented performance failures.

## KAZADI UNDERMINED PLAINTIFF'S AUTHORITY AND INTENSIFIED THE HOTILE ENVIRONMENT

94. After the return of Kazadi on or about August 8, 2025, she undermined Plaintiff's authority, diminished her competence relative to male coworkers, and intensified the hostile environment.

95. Specifically, Kazadi directed staff, vendors and contractors to seek assistance from Ross and other male coworkers instead of Plaintiff.

## PLAINTIFF FILED A COMPLAINT OF DISCRIMINATION TO DEFENDANT'S COMPLIANCE HOTLINE

96. On August 8, 2025, Plaintiff filed an internal written complaint of discrimination and harassment to Defendant's Compliance Hotline via email.

13

Case ID: 260603283

## THE CHIEF HUMAN RESOURCES OFFICER FALSELY PROMISED CONFIDENTIALITY, BUT THEN THREATENED PLAINTIFF'S JOB

97. Later in August 2025, Dr. Charles Joerger, Chief Human Resources Officer, falsely promised confidentiality and then threatened her job, stating he would "hate to see her go," clearly discouraging protected activity.

## PLAINTIFF WAS PLACED ON A MEDICAL LEAVE OF ABSENCE DUE TO HER DISABILITIES

98. Due to the severe stress caused by Defendant's conduct, Plaintiff required psychiatric treatment and was placed on a medical leave of absence by Dr. Charles Palmer from August 13, 2025 to August 26, 2025.

## PLAINTIFF FILED A COMPLAINT OF DISCRIMINATION WITH THE PHRC

99. Plaintiff filed a Complaint of Discrimination with the PHRC in August 2025 alleging religious and gender discrimination as well as retaliation.

## DEFENDANT RETALIATED AGAINST PLAINTIFF UPON RECEIVING NOTIFICATION OF HER EEOC/PHRC CHARGE/COMPLAINT

100. After Defendant was served with the EEOC/PHRC Charge/Complaint on or about September 12, 2025, Kazadi ceased communicating with Plaintiff.

101. Plaintiff then noticed that her time records were altered, reducing her paid hours.

102. On September 23, 2025, Plaintiff called Paul and informed her that her time records had been altered.

103. Paul initially denied that any changes had been made, but then acknowledged that Plaintiff's time records had been altered.

104. She informed Plaintiff that she would speak with Kazadi about the issue.

14

Case ID: 260603283

**DEFENDANT TERMINATED PLAINTIFF**

105. Later that day, on September 23, 2025, Paul terminated Plaintiff's employment via phone call, shortly after her protected activity of filing a Charge, falsely citing "conduct harmful to patients or the business."

106. This stated reason was baseless and pretextual.

107. Upon information and belief, it referred to an incident in which Plaintiff properly enforced Defendant's mask policy and contacted police after a patient became violent.

108. Following the call, Plaintiff asked Nole, Kazadi and LaShawn Frasier, Manager, the reason for her termination.

109. Kazadi instructed Plaintiff to come to the office to speak with her.

110. Plaintiff refused as she intended to hand in her badge and leave.

111. However, Nole forcefully pushed Plaintiff with her finger into the office.

112. Plaintiff then attempted to leave the office but was physically blocked by Nole from leaving the room.

113. Plaintiff was later treated by her doctor and diagnosed with a contusion on her back from Nole pushing her with her finger.

114. Defendant subjected Plaintiff to a hostile work environment and then terminated Plaintiff in retaliation for engaging in protected activity, requesting religious and disability accommodations, and opposing discrimination in violation of Title VII, the ADA, the PHRA and the PFPO.

115. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

15

## COUNT I – SEX DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

116. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

117. Plaintiff is a member of a protected class in that she is female.

118. Plaintiff was qualified to perform the job.

119. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

120. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

121. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

122. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

123. Defendant terminated Plaintiff.

124. As a result of Defendant's unlawful sex discrimination, Plaintiff has suffered damages as set forth herein.

125. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – SEX DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

126. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

127. Plaintiff is a member of a protected class in that she is female.

16

Case ID: 260603283

128. Plaintiff was qualified to perform the job.

129. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

130. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

131. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

132. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

133. Defendants terminated Plaintiff.

134. As a result of Defendant's unlawful sex discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – SEX DISCRIMINATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

135. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

136. Plaintiff is a member of a protected class in that she is female.

137. Plaintiff was qualified to perform the job.

138. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

139. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

140. No legitimate, non-discriminatory reasons exist for the above cited adverse employment

17

Case ID: 260603283

actions that Plaintiff suffered.

141. The reasons cited by Defendant for the adverse employment actions that Plaintiff

suffered are pretext for discrimination.

142. Defendants terminated Plaintiff.

143. As a result of Defendant's unlawful sex discrimination, Plaintiff has suffered damages as

set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra.*

### COUNT IV – RELIGIOUS DISCRIMINATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

144. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

145. Plaintiff is a member of a protected class in that she is a practitioner of Santeria.

146. Plaintiff was qualified to perform the job for which she was hired.

147. Similarly situated people outside of Plaintiff's protected class were treated more

favorably than Plaintiff.

148. Circumstances exist related to the above cited adverse employment actions that give rise

to an inference of discrimination.

149. Defendant discriminated against Plaintiff on the basis of her protected class.

150. No legitimate, non-discriminatory reasons exist for the above cited adverse employment

actions that Plaintiff suffered.

151. The reasons cited by Defendant for the above cited adverse employment actions that

Plaintiff suffered are pretext for discrimination.

152. The above also constitutes a failure to accommodate Plaintiff's requested religious

accommodation and/or to engage in the required interactive process in good faith.

18

Case ID: 260603283

153. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISCRIMINATION BASED ON RELIGION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

154. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

155. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (practitioner of Santeria) and a failure to reasonably accommodate Plaintiff's religious beliefs and/or to engage in the interactive process in good faith.

156. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISCRIMINATION BASED ON RELIGION**
**PHILADELPHIA FAIR PRACTICE ORDINANCE**

157. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

158. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (practitioner of Santeria) and a failure to reasonably accommodate Plaintiff's religious beliefs and/or to engage in the interactive process in good faith.

159. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

19

Case ID: 260603283

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

160. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

161. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

162. Plaintiff was qualified to perform the job.

163. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

164. Circumstances indicated that Plaintiff's disabilities was the reason for the adverse employment action.

165. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

166. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

167. The purported reason for Defendant's decision is pretextual.

168. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

169. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

20

Case ID: 260603283

170. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

171. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VIII – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

172. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

173. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

174. Plaintiff was qualified to perform the job.

175. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

176. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

177. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

178. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

179. The purported reason for Defendant's decision is pretextual.

180. Others similarly situated but outside of Plaintiff's protected class were treated more

21

Case ID: 260603283

favorably.

181. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

182. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT IX – DISABILITY DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

183. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

184. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

185. Plaintiff was qualified to perform the job.

186. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

187. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

188. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

189. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

190. The purported reason for Defendant's decision is pretextual.

22

Case ID: 260603283

191. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

192. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

193. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT X – RETALIATION**
**<u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>**

194. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

195. Plaintiff engaged in activity protected by Title VII.

196. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

197. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

198. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

23

Case ID: 260603283

## COUNT XI – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

199. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

200. Plaintiff engaged in activity protected by the ADA.

201. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

202. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

203. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT XII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

204. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

205. Plaintiff engaged in activity protected by the PHRA.

206. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

207. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

24

Case ID: 260603283

## COUNT XIII – RETALIATION
## PHILADELPHIA FAIR PRACTICES ORDINANCE

208. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

209. Plaintiff engaged in activity protected by the PFPO.

210. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

211. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sakiema Wood, requests that the Court grant her the following relief against Defendant:

(a)    Damages for past and future wage loss;

(b)    Compensatory damages for non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c)    Punitive damages;

(d)    Reasonable attorneys' fees;

(e)    Recoverable costs;

(f)    Pre and post judgment interest;

(g)    An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(h)    Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual

25

Case ID: 260603283

reasons cited for its adverse actions, disciplines, and termination; and

(i)    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: June 15, 2026               **By:** */s/David M. Koller*
                                  David M. Koller, Esquire
                                  Jordan D. Santo, Esquire
                                  2043 Locust Street, Suite 1B
                                  Philadelphia, PA 19103
                                  215-545-8917
                                  davidk@kollerlawfirm.com
                                  jordans@kollerlawfirm.com

                                  *Counsel for Plaintiff*

26

Case ID: 260603283

# <u>VERIFICATION</u>

I, Sakiema Wood, do hereby verify that I am the Plaintiff in the foregoing action; and that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made in the Verification are subject to the penalties of 18 Pa, C.S.A. 4904, relating to unsworn statements.

Date: Jun 24, 2026

sakiema wood (Jun 24, 2026 08:24:56 EDT)
Sakiema Wood